

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Overruled by O-4278-A

Honorable W. A. Davis
State Registrar of Vital Statistics
Texas State Board of Health
Austin, Texas

Dear Sir:

Opinion No. O-4278
Re: Should the State Registrar ac-
cept and file, thus making an
authentic copy prima facie evi-
dence of the facts stated there-
on, such records as those set
forth?

     You have requested the opinion of this department
on whether, as State Registrar, you should accept for filing cer-
tain delayed birth certificates submitted for our inspection.
You point out the irregularities in these certificates as
follows:

     "1.  Mary Susan Mulkey, born February, 1904,
Grady County, Oklahoma.  Affidavits A. and B exe-
cuted in Grady County, Oklahoma, by B. J. Palm,
Justice of the Peace, in Wichita County, Texas.
The court order from Grady County, Oklahoma, is
signed by George W. Harwood, County Judge of
Dallas County, Texas.

     "2.  Lady Ianthe Kennedy, born January,
1918, in Dallas County, Texas.  In Affidavit A
the affiant's name is changed from 'Riddle' to
'Randle'.  The court order fails to state whether
the certificate was or was not to be accepted.

     "3.  Pearl Ruth Garrett, born June, 1894,
in Dallas County, Texas.  The court order fails
to state whether the record is to be or be not
accepted.

     "4.  Charley Cleveland Hanby, born March,
1884, in Boncumbe County, North Carolina.  The
court order directs that the birth certificate
of 'Charley Cleveland T-' be filed.

     "5.  Margaret Ruth Murrah, born August, 1913,

AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honoreble W. A. Davis, Page 2

in Harris County, Georgia; Affidavit B
refers to the birth certificate of I. T.
Murrah rather than Margaret Ruth Murrah.

"6. Idas Tolbert Murrah, born April,
1916, in Crisp County, Georgia. Affidavit A
refers to the birth certificate of Margaret
Ruth Murrah rather than Idas Tolbert Murrah.

"7. Minnie Mae Miller, born February,
1905, in Dallas County, Texas. Affidavit A
refers to the birth certificate of Mrs. D. M.
Barnett. Affidavit B refers to the birth
certificate of Mrs. Mae Drewer, rather than
Minnie Mae Miller, to which it is attached.

"8. Morris Peace, born March, 1913, in
Dallas County, Texas. Item 6 states neither
the legitimacy or illegitimacy of the indi-
vidual. The Medical Attendant's affidavit
does not mention the name of the individual
as shown on the record.

"9. Homer Guy Borry, born August 23, 1941,
in Dallas County, Texas. Affidavit A was exe-
cuted on August 7, 1941, as was Affidavit B,
which was 16 days before the birth occurred.

"10. Andre Claudino McComb, born February,
1911, in apparently, both Texas and Georgia.

"11. Lionell Crowell Daniel, born July,
1888, in Perry County, Tennessee, who swears,
in Affidavit B, that he is not related to him-
self by blood or marriage."

Registration of birth certificates is provided for
under the provisions of Article 4477, Rule 51a, Revised Civil
Statutes of 1925, as amended by Acts 1939, 46th Legislature,
page 346, section 1, and as further amended by House Bills
624 and 974, Acts 1941, 47th Legislature. The pertinent pro-
visions of the law, as applied to the questions here present-
ed, are as follows:

". . . The State Registrer shall prepare
and issue such detailed instructions as may be

required to procure the uniform observance of its provisions and the maintenance of a perfect system of registration; and no other form shall be used than those approved by the State Department of Health. . . .

"And provided further, that any citizen of the State of Texas wishing to file the record of any birth or death that occurred in Texas, not previously registered, may submit to the Probate Court in the County where such birth or death occurred, a record of such birth or death written on the adopted forms of birth and death certificates; and provided further that any citizen of the State of Texas wishing to file the record of any birth or death that occurred outside of the State of Texas, not previously registered, may submit to the Probate Court in the County where he resides a record of that birth or death written on the adopted forms of birth and death certificates. The certificate shall be substantiated by the affidavit of the medical attendant present at the time of the birth, or in case of death, the affidavit of the physician last in attendance upon the deceased, or the undertaker who buried the body. When the affidavit of the medical attendant or undertaker cannot be secured, the certificate shall be supported by the affidavit of some person who was acquainted with the facts surrounding the birth or death, at the time the birth or death occurred, with a second affidavit of some person who is acquainted with the facts surrounding the birth or death, and who is not related to the individual by blood or marriage. The Probate Court shall require such other information or evidence as may be deemed necessary to establish the citizenship of the individual filing the certificate, and the truthfulness of the statements made in that record. The Clerk of said Court shall forward the certificate to the State Bureau of Vital Statistics with an order from the Court to the State Registrar that the record be, or be not, accepted. The

State Registrar is authorized to accept the
certificate when verified in the above man-
ner, and shall issue certified copies of such
records as provided for in Section 21 of this
Act. Such certified copies shall be prime
facie evidence in all Courts and places of
the facts stated thereon. The State Bureau
of Vital Statistics shall furnish the forms
upon which such records are filed, and no other
form shall be used for that purpose."

From a careful consideration of this statute, we
draw the following conclusions:

A. The purpose of the act is "to procure the uni-
form observance of its provisions and the maintenance of a
perfect system of registration" of births and deaths. The
State Registrar of Vital Statistics is required to prepare
and issue detailed instructions necessary to effect this
purpose.

B. The State Department of Health shall approve,
and "the State Bureau of Vital Statistics shall furnish,
the forms upon which such records are filed, and no other
form shall be used for that purpose." The law contemplates
that the forms furnished shall provide space for the furnish-
ing of the information required by the statute, and that
the "use" of such forms shall consist of a substantial com-
pliance with the statute in this respect.

C. When a "delayed birth certificate" has been
"verified in the above manner", i.e., by the affidavit of
the medical attendant present at the time of the birth; or
(in case this cannot be secured) the affidavit of some per-
son who was acquainted with the facts surrounding the birth
at the time it occurred, with a second affidavit of some
person who is acquainted with the facts surrounding the birth,
and who is not related to the individual by blood or marriage;
plus (in either case) an order of the Probate Court that the
record be accepted; then the State Registrar is required to
accept and file the record. But until such verification is
complete, and in due form, the State Registrar is not author-
ized to accept and file the record, except as noted below
under "D". We are further of the opinion that the statute
contemplates that the "second affidavit" shall be made by

someone other than the person whose birth is being recorded.

D. The only exception to the requirements noted under rule "C", above, contemplated by the statute, is that, where it is shown to the satisfaction of the Probate Court that it is impossible to verify the facts of the birth in either of the two manners provided by the act, then the court may require such other evidence thereof as he deems necessary, and may base his order that the record be accepted, or be not accepted, upon such other evidence, or the lack of it. But where such a record of birth is submitted to the State Registrar for filing, it should show on its face that it is based upon such other evidence, and that the Probate Court has found the impossibility of securing the statutory affidavits.

Each of the birth records submitted by you fails to meet the statutory requirements in some material particular, as pointed out in the portions of your letter quoted above. We note that none of them is shown, either by the order of the Probate Court or otherwise, to come within the exception noted in rule "D", above.

It is therefore our opinion that the State Registrar should not accept for filing the birth records submitted, and that each should be returned to the clerk of the Probate Court by whom it was forwarded to the Bureau of Vital Statistics, with the errors noted for correction.

We are returning herewith the records sent with your request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /signed/

W. R. Allen
Assistant

WRA:GO
WRA/JP

ENCLOSURES

APPROVED MAY 15, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By B. W. B., Chairman